# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**BILLY BLEDSOE,**
**Claimant Below, Petitioner**

**FILED**

May 5, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 16-0383** (BOR Appeal No. 2050851)
                            (Claim No. 2015019229)

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Respondent**

### MEMORANDUM DECISION

Petitioner Billy Bledsoe, by Robert L. Stultz, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Murray American Energy, Inc., by Aimee M. Stern, its attorney, filed a timely response.

The issue on appeal is two-part. The first issue is whether the cervical disc displacement should be held a compensable component of the claim, and the second is whether the request to reopen the claim for temporary total disability benefits should be granted. This appeal originated from the March 25, 2015, and May 5, 2015, claims administrator's decisions which denied the request to add the cervical disc displacement to the claim and closed the claim for temporary total disability benefits, respectively. In its September 23, 2015, Order, the Workers' Compensation Office of Judges affirmed the decisions. The Board of Review's Final Order dated March 24, 2016, affirmed the Order of the Office of Judges. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Billy Bledsoe, a coal miner, was injured in the course of his employment on January 5, 2015, when he stood up from a crouching position and struck his head on an overhead waterline. On January 8, 2015, Mr. Bledsoe was still in pain and sought medical treatment at Corporate

1

Health at Wheeling Hospital. Ross Tennant, FNP, examined Mr. Bledsoe. Mr. Bledsoe reported that he initially felt like he "jammed his neck" in the injury but over the course of the following few days he also developed numbness and tingling in his left hand. Mr. Tennant's impression was a closed head injury and a cervical strain. An x-ray of the cervical spine revealed Mr. Bledsoe had degenerative disc disease and degenerative joint disease, most prominent at the C5-6 level. Mr. Tennant recommended a cervical MRI and an EMG study of Mr. Bledsoe's left upper extremity. Mr. Bledsoe was placed on light duty.

Mr. Bledsoe's symptoms persisted and on January 13, 2015, he saw Mr. Tennant for further treatment. Mr. Bledsoe had experienced some headaches and episodes of dizziness. Mr. Tennant's impression was closed head injury, cervical strain, and post-concussive syndrome for which he was sent to the emergency room. A CT scan of the brain revealed no acute abnormalities. A CT scan of the cervical spine showed degenerative disc disease with a disc osteophyte at C5-6. Mr. Bledsoe underwent an MRI on January 15, 2015, which revealed a right paracentral C5-6 disc herniation with cord compression and C6-7 spurring, which caused some central stenosis. On January 22, 2015, the claims administrator held the claim compensable for neck sprain and head injury. Mr. Bledsoe was granted temporary total disability benefits from January 9, 2015, through March 9, 2015.

On February 8, 2015, Mr. Bledsoe saw David Benjamin Cohen, M.D., for a neurosurgical consultation. Dr. Cohen assessed that Mr. Bledsoe had generalized numbness of the upper left extremity without any clear-cut radicular symptoms. After reviewing the MRI taken on January 15, 2015, Dr. Cohen noted that he did not believe cervical surgery was indicated. He prescribed physical therapy and an anti-inflammatory medicine. Mr. Bledsoe followed up with Mr. Tennant on February 10, 2015. Mr. Tennant opined that Mr. Bledsoe's continued symptoms were most likely due to degenerative changes of the spine, which had been documented in medical records as early as February of 2013, when Mr. Bledsoe was first diagnosed with radiculopathy. An EMG/NCS study performed on March 14, 2013, showed chronic radiculopathy at C5-6. The study noted that Mr. Bledsoe reported a history of neck pain radiating into the right upper extremity.

On February 16, 2015, an EMG/NCS study of Mr. Bledsoe's upper left extremity was performed. Henry Kettler, M.D., interpreted the study and noted that it revealed carpal tunnel syndrome, left ulnar neuropathy, acute changes in the C6-7 nerve root distribution, and chronic changes in the C5-6 and C5 axillary nerve deltoid muscle. Dr. Kettler stated that the findings suggested ongoing chronic processes. He opined that a severe blow to Mr. Bledsoe's head and pressure on the back of the head may have contributed to his nerve root injury. Dr. Kettler explained that when compression occurs to nerve roots distally and someone also has carpal tunnel history, a double compression syndrome can result. The fact that Mr. Bledsoe had this injury with some central stenosis and cord compression would put him at risk of these features developing with his type of injury. Mr. Tennant subsequently requested that C5-6 disc herniation be added as a compensable component of the claim.

On March 10, 2015, Mr. Bledsoe was evaluated by Clark Milton, D.O. Dr. Milton's impression included complaints of paracervical and parascapular myalgias and arthralgias that

were musculoligamentous, multilevel cervical disc disease, and triple or compressive neuropathies. Dr. Milton did not believe surgical intervention was needed. He was hopeful a few more weeks of physical therapy would resolve Mr. Bledsoe's symptoms but stated it was a difficult situation due to the multifactorial issues present.

On March 20, 2015, Mr. Bledsoe underwent an independent medical evaluation performed by Bill Hennessey, M.D. At the time of the evaluation, Mr. Bledsoe had full range of motion in his cervical spine and left shoulder. Dr. Hennessey diagnosed the work-related injury as a closed head injury and cervical spine sprain/strain. He believed that Mr. Bledsoe had reached maximum medical improvement and opined that no further treatment was necessary for the compensable injury. Dr. Hennessey opined that Mr. Bledsoe had no permanent impairment due to the compensable injury. On March 25, 2015, the claims administrator denied cervical disc displacement as a compensable component of the claim.

Mr. Bledsoe's symptoms persisted and he sought treatment from Dr. Milton on April 20, 2015. An x-ray was taken and Dr. Milton's impression was subacute chronic neck pain, cervical strain/sprain which should have resolved, degenerative disc disease, and an episode of weakness and dizziness. Dr. Milton recommended Mr. Bledsoe follow-up with his personal physician or a cardiologist. The claims administrator closed the claim for temporary total disability benefits on May 5, 2015.

Mr. Bledsoe testified in a deposition before the Office of Judges on June 29, 2015, that he injured his back on January 5, 2015, when he stood up in a load of rock dust and struck his head on a waterline. The impact broke his hardhat and he fell to the floor, immediately feeling pain in his neck. Mr. Bledsoe finished the shift and sought medical attention three days later when his symptoms had not resolved. Mr. Bledsoe underwent an MRI and an evaluation by Dr. Cohen, who opined that surgery was not necessary. Mr. Bledsoe's symptoms did not improve with physical therapy so he requested a second neurosurgical opinion. His appointment with Dr. Hennessey lasted only ten minutes and no measurements of the spine were taken. Mr. Bledsoe complained of continued symptoms of numbness and tingling in his left hand and testified he never experienced these prior to the compensable injury.

On July 17, 2015, Dr. Hennessey performed a record review and opined there was insufficient evidence of any injury occurring to the cervical disc or neck on January 5, 2015. Objective medical evidence revealed normal x-rays without any post-traumatic findings. Dr. Hennessey pointed out that Mr. Bledsoe has a significant history of pre-existing neck pain and cervical radiculopathy dating back to 2013. Dr. Hennessey opined the mechanism of injury was consistent with cervical strain and nonspecific head injury and that he saw no evidence of any additional condition related to the injury.

On September 23, 2015, the Office of Judges affirmed the claims administrator's decisions denying cervical disc displacement as a compensable component of the claim and closing Mr. Bledsoe's claim for temporary total disability benefits. The Office of Judges found that although there was objective imaging evidence of a disc herniation, no medical evidence suggested a causal connection to the work-related injury. The medical evidence of record

3

indicates that Mr. Bledsoe's herniation was caused by naturally occurring degenerative disease rather than the injury. The Office of Judges noted that both Dr. Milton and Mr. Tennant opined Mr. Bledsoe's symptoms were related to his pre-existing conditions. The disease was documented in 2013 when an MRI showed chronic radiculopathy at C5-6. Similarly, a CT scan taken after the injury shows degenerative disc disease at C5-6. The Office of Judges determined Mr. Bledsoe failed to show by a preponderance of the evidence that the disc herniation should be added to the claim. The Office of Judges also noted that West Virginia Code §23-4-7a (2005) suspends temporary total disability benefits at the earliest of either the claimant reaching maximum medical improvement, the claimant being released to work, or the claimant returning to work. Dr. Hennessey placed Mr. Bledsoe at maximum medical improvement on March 20, 2015, and there was no medical evidence to refute his finding. The Office of Judges affirmed the claims administrator's decision closing the claim for temporary total disability benefits. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on March 24, 2016.

We agree with the findings of fact and conclusions of law of the Office of Judges as affirmed by the Board of Review. No treating physician has shown a causal connection between the disc herniation and the compensable injury. Further, Mr. Bledsoe has a significant history of degenerative disc disease which more than likely is the source of his symptoms. Additionally, Mr. Bledsoe has been placed at maximum medical improvement and is thus not qualified to receive further temporary total disability benefits.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: May 5, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Elizabeth D. Walker

**DISSENTING:**
Justice Menis E. Ketchum

4